[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, 43, whose family or birth name was Hickey, and the defendant husband, 52, married on August 23, 1980 in New Haven, Connecticut. The plaintiff's continuous Connecticut residence for over one year prior to commencing this dissolution of marriage action furnishes this court with jurisdiction, sec. 46b-44(c). There are three children, all issue of the marriage, Donald J. d.o.b. 7/6/87, Natalie M. d.o.b. 12/15/89 and Molly P. d.o.b. 2/20/92.
The plaintiff received her undergraduate college degree from Smith in 1976, a master's degree in management from Harvard in 1982 and an M.B.A. in 1985 from New York University. Except for five or six weeks post partum the plaintiff pursued a career in finance with an institution until the end of February, 1994 when the company was sold. The plaintiff received a severance package of a year's income as well as performance bonus for 1993 of $260,000.00. Her total salary including severance and bonus totaled $507,864.00 as reported on her 1994 Form 1040 (Plaintiff's Exhibit #1).
The plaintiff had an operation for breast cancer in February, 1996 and is presently treating for the condition.
The plaintiff began employment recently with McMahan Securities in Greenwich, Connecticut at a salary of $100,000.00. She is able to manage the children with the help of a nanny who drives. The plaintiff uses taxis to and from work. She has lost several days' work because of her health problems. The court also notes that she became ill in the courtroom during the trial. The court concludes that the plaintiff's earning capacity is presently impaired due to these health problems.
The defendant graduated from Harvard Law School in 1982 and CT Page 4010-A joined Cravath, Swain Moore in New York City. In December 1989 he was passed for partnership. He accepted the position of salaried associate at $285,000.00 which has continued to the present time.
The defendant allowed the plaintiff to manage the family finances. He had his salary on direct deposit into the joint account and also obtained a $50,000.00 loan from his employer in October, 1994 which was also deposited to the joint account. Although the parties physically separated in mid March, 1994, the defendant continued the direct deposits until January, 1995 when he opened his own account.
The parties owned and maintained three residences in the early 1990's, one in New York City, a home in Stamford, and a third in Mattapoisett, Massachusetts. The Massachusetts property was disposed of at a loss. The parties raised the money necessary to complete a sale by borrowing $90,000.00 from Citibank Mortgage.
The Stamford, Connecticut marital home located at 1 Smoke Hill Drive was foreclosed. There appears to be no deficiency claimed.
It is not clear what happened to the New York City residence. Suffice to say it no longer exists.
The parties lived beyond their means for several years, borrowing from the future. When the plaintiff's period of unemployment began in February, 1994, she failed to retrench or to modify her life style. For his part, the defendant permitted the deficit spending to continue.
The plaintiff has now amassed $190,377.00 in debts in her sole name, listing 38 items, including 1994 federal income tax $17,397.00; 1994 Connecticut income tax $176.00 and 1995 federal income tax $1,388.00. The court declines to entertain orders burdening the defendant with contributing to the payment of these debts.
The major joint debts are:
Citibank $95,000.00
Greenwich Country Day $22,500.00 CT Page 4010-B
Credit accounts and charge accounts $28,400.00
Toyota credit $ 5,700.00 -------------
Total $151,600.00
Each party shall have to share 50% of each joint debt and quarterly advise the other party of any payments made on any joint debt during the prior three months. The court's orders will take into consideration that the defendant, who has the dependable income stream, must first devote his efforts to supporting his children, paying alimony to their mother, and to settlement of the various tax bills overdue for 1991, 1992, and 1993.
Those joint tax obligations are:
1991 State income $ 267.00
1992 Federal $ 3,013.00
1992 Connecticut $ 2,786.00
1993 Federal $ 60,978.00
1993 Connecticut $ 1,551.00
 1993 New York $ 31,311.00 -------------
Total $ 99,906.00
The defendant will have to undertake the settlement of these claims since he is in the better position to do so. However, the court will not enter any order of indemnity in favor of either party. The parties' finances are the primary cause of the marriage breakdown. Neither party exercised restraint, and they both bear responsibility equally.
They agree on joint legal custody with primary residence with the plaintiff and reasonable visitation to the defendant.
Having reviewed the evidence in light of the statutory criteria of § 46b-81, § 46b-82 and § 46b-84 and other applicable law, the court enters the following judgment. CT Page 4010-C
1. A decree is entered dissolving the parties' marriage on the ground of irretrievable breakdown, and each party is now declared unmarried.
2. Joint legal custody of the three children is ordered with primary residence with the plaintiff and reasonable visitation to the defendant as requested by the defendant. The court adopts the defendant's visitation schedule as its court order, except Thanksgiving weekend which shall be alternated rather than split, as detailed in the defendant's Exhibit D which is incorporated and attached as an appendix to the decision and shall be incorporated in the judgment file.
3. The combined net income of the parties exceeds the Connecticut Child Support Guidelines, Sec. 46b-215a-2 (a), and the child support presumptive minimum is $572.00 or $430.00 for the defendant's share. Since the court must deal with it on a "case by case" basis, the court finds it appropriate for the defendant to pay unallocated alimony and child support. A contingent wage withholding order is entered.
4. The defendant shall continue to cover the children for all available coverages provided by his employer. The parties shall equally bear all uninsured bill balances and deductibles for all medical treatment given for the care of their children. The provisions of § 46b-84 (d) apply to this order.
5. The defendant shall continue to maintain the existing life insurance covering him for the benefit of the minor children as a group as primary beneficiaries.
6. The defendant shall pay $1,000.00 per week unallocated alimony and child support to the plaintiff until her remarriage, the death of either party, further court order, or June 1, 2009.
7. The parties shall continue to be equally liable on all joint tax liabilities, but the defendant shall undertake the compromise, payment, or deferral of said joint tax items.
8. The plaintiff shall continue to be solely responsible for her sole debts.
9. The defendant shall continue to be solely responsible for his sole debts. CT Page 4010-D
10. The parties shall continue to be liable on their joint debts and quarterly shall advise each other of any payments made during the prior three months.
11. Each party shall otherwise retain any property presently possessed.
Counsel of the plaintiff shall prepare the judgment file.
HARRIGAN, JUDGE
CUSTODY AND CUSTODIAL TIME
Defendant Robin Landis requests that the Court direct that he and Plaintiff Lorrie Landis have joint legal custody of the three children of the marriage.
Further Defendant Robin Landis requests that the Court direct that he have unconditional, liberal custodial time with each of the three children, at a minimum during the following periods:
1. on alternate weekends from Friday afternoon at 6:00 p.m. through Sunday afternoon at 5:00 p.m., commencing with the weekend of April 26, 1996, such weekend custodial time to continue except during periods of school recess, holidays, or birthdays otherwise mentioned below.
2. on alternating school recesses and holidays as follows:
a. in even-numbered years
Lorrie Landis Robin Landis — ---------- ------------
Spring recess Mid-winter recess Easter weekend Memorial Day recess July 4 Labor Day weekend Columbus Day weekend Veteran's Day recess Thanksgiving recess Thanksgiving recess (first half) (second half) Christmas recess Christmas recess (second half) (first half) CT Page 4010-E
b. in odd-numbered years
Robin Landis Lorrie Landis — --------- -------------
Spring recess Mid-winter recess Easter weekend Memorial Day recess July 4 Labor Day weekend Columbus Day weekend Veteran's Day recess Thanksgiving recess Thanksgiving recess (first half) (second half) Christmas recess Christmas recess (second half) (first half)
c. Monday or Friday recesses not mentioned above shall be added to alternate weekends.
d. Lorrie Landis shall have the children on her birthday and on Mother's Day in each year.
e. Robin Landis shall have the children on his birthday and Father's Day in each year.
f. Robin Landis shall have the children on their birthdays in even-numbered years;
g. Lorrie Landis shall have the children on their birthdays in odd-numbered years.
h. Robin Landis shall have the children for two consecutive weeks during summer recess in any year.
i. Robin Landis shall have the children with him for a mid-week evening in each week.
j. Robin Landis shall have liberal telephone contact with the children and providers for the children.